United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Hidroeléctrica Santa Rita, S.A., Petitioner, | ) ) ) |
| v. | ) ) Civil Action No. 21-23807-Civ-Scola ) |
| Corporación AIC, S.A., Respondent. | ) ) |

### Order Confirming Arbitration Award

Hidroeléctrica Santa Rita, S.A. ("HSR") initiated this action against Corporación AIC, S.A. ("AICSA"), seeking confirmation of an international arbitration award. (Pet., ECF No. 1.) AICSA, in turn, seeks vacatur of the award on the grounds that the arbitral tribunal exceeded its powers. (Resp., ECF No. 26.) HSR has replied in support of the Petition. (Reply, ECF No. 27.) For the reasons set forth below, the Court **grants** the Petition. (**ECF No. 1**.)

**1. Background**

This matter involves both a petition to confirm an international arbitration award by Petitioner HSR and a motion to vacate that award by Respondent AICSA. (Pet.; Resp.; Order Consol. Rel. Cases at 1, ECF No. 23.) AICSA originally moved to vacate the award in 2019 in a separate action, and this Court denied the motion to vacate under the Eleventh Circuit Court of Appeals' then-applicable standards. *Corporacion AIC, S.A. v. Hidroelectrica Santa Rita, S.A.*, Case No. 19-20294, ECF No. 52 (S.D. Fla. Aug. 4, 2020). HSR then filed its petition to confirm the award in this action. (Pet.) The Court stayed both cases during the pendency of AICSA's appeal. On appeal, the Eleventh Circuit, sitting en banc, overruled its prior precedent and determined that the domestic standards for vacatur in the Federal Arbitration Act ("FAA," 9 U.S.C. §§ 1 *et seq.*) govern vacatur of international arbitration awards under the New York Convention. *Corporacion AIC, SA v. Hidroelectrica Santa Rita S.A.*, 66 F.4th 876, 886 (11th Cir. 2023). Following the Eleventh Circuit's remand, the Court consolidated both cases and now considers both HSR's petition for confirmation of the award and AICSA's motion to vacate the award. (Order Consol. Rel. Cases; Pet.; Resp.)

The international arbitration award itself relates to the parties' contract for the construction of a hydroelectric power plant in Guatemala. (Pet. ¶¶ 9-11.) HSR "engaged AICSA for the full turnkey design, engineering, procurement, construction, start-up and commissioning of a power plant." (*Id.* ¶ 10.) HSR

stopped AICSA's work in 2013 under a force majeure notice and later terminated that construction contract (the "EPC Contract") in 2015. (*Id.*) HSR then initiated an international arbitration proceeding in accordance with the parties' contract. (*Id.* ¶ 9.) The arbitral panel (the "Tribunal") eventually issued an 80-page award addressing HSR's and AICSA's claims in full, awarding HSR $7,017,231.52 but declaring neither party to be the "clear winner" in light of all the claims and issues that the Tribunal resolved. (Decl. of R. Llano Ex. 1 (the "Award") ¶¶ 418, 440, ECF No. 1-1.)

AICSA challenges the award on the grounds that the arbitral panel purportedly "exceeded their powers" by failing to follow the terms of the EPC Contract and by failing to follow Guatemalan law in determining the award. (Resp. ¶ 1.) HSR, in turn, contends that AICSA seeks an improper "second bite at the apple" by asking the Court to "dig into the facts" and "reconsider the decision of the Tribunal." (Reply at 5.) With the Eleventh Circuit's decision in *Corporacion AIC* in mind, the Court reviews AICSA's arguments for vacatur of the award in full.[1] 66 F.4th at 886.

### 2. Legal Standard

The parties do not dispute that the arbitration at issue here is governed by the Inter–American Convention on International Commercial Arbitration (opened for signature Jan. 30, 1975, O.A.S.T.S. No. 42, 1438 U.N.T.S. 245) (referred to interchangeably as both the "Panama Convention" and the "Inter-American Convention"). *See* 9 U.S.C. §§ 301–307 (implementing the Convention). With respect to enforcement matters and interpretation, the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 38 (effective for the United States on Dec. 29, 1970), reprinted in 9 U.S.C. §§ 201–208, and the Panama Convention are substantially identical. Thus, the case law interpreting provisions of the New York Convention are largely applicable to the Panama Convention and vice versa. *See Corporacion Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v. Pemex-Exploracion y Produccion*, 962 F. Supp. 2d 642, 653 (S.D.N.Y. 2013), *aff'd*, 832 F.3d 92 (2d Cir. 2016) ("The Panama Convention and . . . the []New York Convention[] are largely similar, and so precedents under one are generally applicable to the other.") (citing *Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.*, 23 F.3d 41, 45 (2d Cir. 1994) ("The legislative history of the [Panama] Convention's

---

[1] The Court previously denied AICSA's motion for leave to file a sur-reply and struck the proposed sur-reply because it was improperly filed on the docket. (Order, ECF No. 31.) The Court therefore does not consider the arguments made in the sur-reply, but nonetheless observes that the Court's decision here would be no different if it had considered the sur-reply.

implementing statute . . . clearly demonstrates that Congress intended the [Panama] Convention to reach the same results as those reached under the New York Convention" such that "courts in the United States would achieve a general uniformity of results under the two conventions.").

To determine whether an international; arbitration award may be vacated, courts in the Eleventh Circuit now look to Section 208 of the FAA. *Corporacion AIC*, 66 F.4th at 886 ("Based on the Supreme Court's discussion in *Outokumpu* and the New York Convention's binary framework, we hold that the primary jurisdiction's domestic law acts as a gap-filler and provides the vacatur grounds for an arbitral award."). Section 208, in turn, "contemplates that the grounds for vacatur are the ones set out in Chapter 1 of the FAA." *Id.* In Section 10 of Chapter 1 of the FAA, the following grounds for vacatur of an arbitration award are identified:

> **(1)** where the award was procured by corruption, fraud, or undue means;
> **(2)** where there was evident partiality or corruption in the arbitrators, or either of them;
> **(3)** where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> **(4)** where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

The party seeking vacatur under Section 10 of the FAA "bears a heavy burden." *Dorward v. Macy's Inc.*, 588 F. App'x 951, 954 (11th Cir. 2014). As is generally true of foreign arbitration awards, to obtain vacatur under Section 10(a)(4), "it is not enough ... to show that the arbitrators committed an error— or even a serious error." *S. Mills, Inc. v. Nunes*, 586 F. App'x 702, 704 (11th Cir. 2014) (quoting *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671, (2010) (cleaned up). Rather, vacatur is appropriate "only when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable." *S. Mills*, 586 F. App'x at 704 (quoting *Stolt–Nielsen,* 559 U.S. at 671 (cleaned up).

### 3. Analysis

AICSA fails at every step to overcome the "high hurdle" to meet the standard required for vacatur of an arbitration award on the basis that the arbitrators exceeded their powers. *Id.* Rather, AICSA seeks to relitigate each issue it raises and to have the Court second-guess the decisions of the Tribunal with which AICSA disagrees. Even if AICSA is correct that the Tribunal erred in some of its decisions, the Court may not disturb those decisions here. *Id.* Each of the Tribunal's decisions is based on the terms of the parties' EPC Contract or is otherwise not reviewable here, so the Court cannot find that the Tribunal "dispense[d] [its] own brand of industrial justice." *Id.* Accordingly, the Award must be confirmed. *Id.*

### A. The Tribunal did not exceed its powers by requiring AICSA to maintain the advance payment bonds or, if those bonds had expired, to obtain new bonds.

AICSA first argues that the Tribunal exceeded its authority by obligating AICSA to post "new bonds." (Resp. at 8.) In an Addendum to the Award, the Tribunal clarified that, when it required AICSA to maintain the bonds originally called for in the EPC Contract, that required AICSA to provide new bonds complying with the contract specifications if any of those bonds had lapsed prior to the issuance of the Award. (Resp. Ex. 7 (the "Addendum") ¶¶ 52-60, ECF No. 26-7.) This, AICSA contends, was outside the Tribunal's authority because it required AICSA to do something the EPC Contract never called for—provide new bonds after the EPC Contract was terminated. (Resp. ¶¶ 23, 25.)

The problem for AICSA here is that the Tribunal grounded its decision in the terms of the EPC Contract, requiring only that AICSA provide "new" bonds equivalent to those called for in the EPC Contract, if AICSA had allowed any of the contractually mandated bonds to lapse. (Award ¶ 440; Addendum ¶ 52.) In determining whether an arbitrator exceeded his authority under Section 10(a)(4) of the FAA, "the sole question for [the Court] is whether the arbitrator (even arguably) interpreted the parties' contract, not whether she got its meaning right or wrong." *Wiregrass Metal Trades Council AFL-CIO v. Shaw Env't & Infrastructure, Inc.*, 837 F.3d 1083, 1088 (11th Cir. 2016) (cleaned up). In other words, whether the Court would consider the EPC Contract to allow for reissuance of the bonds is not relevant here—but that, effectively, is what AICSA asks the Court to consider.

Rather, the Tribunal plainly interpreted the EPC Contract in requiring AICSA to provide the bonds called for in that contract should they have lapsed: while the bonds themselves may have been "new" in the sense that they would

need to be reissued, the Tribunal required those "new" bonds to conform to the terms of the EPC Contract. (Award ¶ 440; Addendum ¶¶ 52-60.) Therefore, the Tribunal's decision did not "lack[] any contractual basis" and the Court's vacatur inquiry on this issue must end there. *S. Commc'ns Servs., Inc. v. Thomas*, 720 F.3d 1352, 1359 (11th Cir. 2013) (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013)).

### B. The Tribunal did not exceed its powers by denying AICSA's claim that HSR breached the EPC Contract's anti-corruption provisions.

Next, AICSA argues that the Tribunal exceeded its authority by "choosing not to enforce the anti-corruption provisions in the EPC Contract." (Resp. at 11.) AICSA claims that the Tribunal "refused to apply" the anti-corruption standards called for in the EPC Contract to find that HSR wrongfully "made a payment to the local authorities as a *quid pro quo* for government support" of the hydroelectric powerplant project. (*Id.* ¶ 33.) This argument, again, asks the Court to review the substance of the Tribunal's decision where that decision was grounded in the terms of the EPC Contract.

The Tribunal found that the "payment"—a roughly $50,000 donation of roofing materials—was not a breach of the EPC Contract both because the Tribunal lacked jurisdiction to determine that HSR breached the underlying laws at issue (United States and United Kingdom anti-corruption laws) and because "the evidence offered by AICSA in support of its allegations that a bribe was paid is insufficient." (Award ¶¶ 342, 344.) Setting aside the jurisdictional issue, the Court cannot and will not review the Tribunal's fact-finding. The Tribunal's determination that the evidence AICSA submitted to prove the payment was a bribe under the terms of the EPC Contract was "insufficient" is reason enough for the Court not to vacate the Award on these grounds. (Award ¶ 344); *S. Mills*, 586 F. App'x at 704.

### C. The Tribunal did not exceed its powers by refusing to join a subcontractor to the arbitration proceeding.

AICSA also argues that the Tribunal exceeded its powers "when it held that Novacom, a subcontractor to the Project, could not be joined to the Arbitration, despite the EPC Contract expressly providing for joinder." (Resp. ¶ 51.) Once again, AICSA seeks to have the Court wrongly review and correct the Tribunal's interpretation of the EPC Contract.

The Tribunal's decision clearly establishes that it was interpreting the EPC Contract when it refused to join Novacom to the proceedings. In so holding, he Tribunal expressly stated that "when parsed carefully and given

their ordinary meaning, the terms of Section 32.4(a) of the EPC Contract do not set forth HSR's consent to submit the claims asserted by Novacom against HSR to arbitration." (Award ¶ 80.) The Court is at a loss to determine how the Tribunal's decision on this matter could be anything other than "arguably interpreting the parties' contract." *Wiregrass Metal*, 837 F.3d at 1088 (cleaned up). Whether the Tribunal "got its meaning right or wrong," the EPC Contract clearly provided the basis of the Tribunal's decision. *Id.* The Court will therefore not review this decision here.

### D. The Tribunal did not exceed its powers by denying AICSA's claim for lost profits or by awarding HSR interest on advance payments.

Additionally, AICSA argues that the Tribunal exceeded its powers by failing to apply Guatemalan law to resolve AICSA's claim for indemnification and by requiring "AICSA to pay interest on advance payments AICSA was required to return to HSR." (Resp. ¶¶ 66, 71.) AICSA argues that Guatemalan law entitled it to recovery of its lost profits as indemnification upon the EPC Contract's termination. (*Id.* ¶ 67.) It also argues that the advance payments could not be considered a loan under Guatemalan law, so interest could not be awarded to HSR as part of the requirement to return those payments. (*Id.* ¶¶ 71-72.)

Manifest disregard for the law, however, is not grounds for vacatur of an arbitration award under the FAA in the Eleventh Circuit. *Frazier v. CitiFinancial Corp., LLC*, 604 F.3d 1313, 1324 (11th Cir. 2010) (holding "judicially-created bases for vacatur [to be] no longer valid" in light of the Supreme Court's decision in *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008)). Although AICSA couches its argument for vacatur as based in the text of Section 10(a)(4), because the Tribunal purportedly "exceeded its powers" by recognizing that Guatemalan law applied but choosing not to apply it, the Eleventh Circuit considered and rejected such an argument in *Frazier*. 604 F.3d at 1323-24.

In *Frazier*, The Eleventh Circuit noted that, unlike the Fifth Circuit, the "Second and Ninth Circuits . . . [treat] manifest disregard of the law not as an additional, independent non-statutory ground for vacatur, but instead as a judicial interpretation of the district court's power under § 10(a)(4) to vacate an award where the arbitrator 'exceeded his powers.'" *Id.* at 1323 (cleaned up). But the Eleventh Circuit followed the Fifth Circuit's approach, holding that courts may no longer vacate arbitration awards on the grounds of manifest disregard of the law. *Id.* at 1323-24. In doing so, the Eleventh Circuit observed that the text of the FAA and the "categorical language of *Hall Street* compels such a

conclusion." *Id.* at 1324. Therefore, the Court may not even consider this issue as grounds for vacatur.[2]

### E. The Tribunal did not exceed its powers by denying AICSA's claim for attorneys' fees and costs where AICSA was not the clear winner in the underlying arbitration.

Finally, AICSA argues that the Tribunal exceeded its powers by failing to award AICSA its attorneys' fees and costs as the prevailing party in the arbitration. (Resp. ¶ 75.) Given the fact that AICSA is the party contesting the confirmation of the Award, this argument defies logic. Worse, it ignores the Tribunal's clear and unequivocal determination that it could not award fees and costs to either party because, under the terms of the EPC Contract, "there is no clear winner between HSR and AICSA when merits, procedural and jurisdictional disputes are considered." (Award ¶ 418.) As with the other decisions the Court has reviewed above, this decision by the Tribunal is "arguably interpreting the parties' contract." *Wiregrass Metal*, 837 F.3d at 1088 (cleaned up). The Court may not and will not revisit it here.

### 4. Conclusion

In sum, because the Court has found no grounds upon which to refuse to recognize or enforce the arbitration award, and no grounds on which to vacate the award, the Court must confirm the award. *See* 9 U.S.C. § 207. The Court **grants** the Petitioner's Petition to Confirm and Enforce the Arbitration Award. (**ECF No. 1**.) The Court will separately enter final judgment in favor Hidroeléctrica Santa Rita, S.A. and against Corporación AIC, S.A, as required by Federal Rule of Civil Procedure 58. This case is **dismissed** with prejudice. The Court directs the Clerk to **close** this case. Any pending motions are **denied as moot**.

**Done and ordered** in Miami, Florida, on July 28, 2023.

_____
Robert N. Scola, Jr.
United States District Judge

---

[2] Even if the Court could consider manifest disregard for the law, the Tribunal clearly considered Guatemalan law in its decision, and the Court would not review the Tribunal's decision for errors, "even a serious error." *S. Mills*, 586 F. App'x at 704.